**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DEREK LEAP,** | : | |
| *Plaintiff*, | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **TAKASHI YOSHIDA et al.,** | : | **No. 14-3650** |
| *Defendants*. | : | |

**M E M O R A N D U M**

PRATTER, J.                                                          FEBRUARY 12, 2015

Derek Leap is a former employee at Hikaru Center City and Hikaru Manayunk, two restaurants in Philadelphia where he was a server. T.B. Yoshida Inc. and TNM Corporation (both of which are controlled by Takashi Yoshida) are the corporate owners of the Hikaru restaurants. In this lawsuit, Mr. Leap alleges that Mr. Yoshida, T.B. Yoshida Inc., and TNM Corporation (a) illegally required tip employees to share their tips with non-server employees, (b) improperly took a tip credit against the minimum wage of tipped employees, and (c) deducted an "excessive portion" of the gratuities that customers left on credit cards for Mr. Leap and other servers. Mr. Leap alleges that these actions violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 216(b), the Pennsylvania Minimum Wage Act, 43 Pa. Stat. §§ 333.101 *et seq.*, the Pennsylvania Wage Payment and Collection Law, 43 Pa. Cons. Stat. §§ 260.1 *et seq.*, and the Philadelphia Gratuity Protection Ordinance, Phila. Code § 9-614. Mr. Leap also claims that the Defendants' retention of Plaintiffs' gratuities constituted conversion and unjust enrichment.

Defendants deny all of the allegations and maintain that their compensation practices were lawful. In particular, Defendants claim that all participants in the tip pool were "front facing" who directly earned tips by waiting on customers and participating in customer service. Defendants also claim that they acted in good faith at all times.

1

Mr. Leap filed a Motion for Class Action Certification of the State Law Claims (Docket No. 19) and a Motion for Conditional Certification of Collective Action under § 16(b) of the Fair Labor Standards Act (Docket No. 17). Before Defendants responded to the Motions, the parties reached a settlement that resolved both the class action and collective action claims. The parties now seek (a) the Court's preliminary approval of the settlement under Federal Rule of Civil Procedure 23, (b) the Court's preliminary certification of the Class for purposes of settling the state law claims, and (c) the Court's conditional certification of the Collective for purposes of settling the FLSA claim.

Upon consideration of Mr. Leap's Motion for Preliminary Approval of Class and Collective Action Settlement (Docket No. 22), and after hearings on December 5, 2014 and February 5, 2015, the Court will preliminarily certify the Class, will conditionally certify the Collective, and will preliminarily approve the Settlement Agreement, subject to a final fairness hearing.

## I.     BACKGROUND

### A.     Terms of the Settlement

The Settlement Agreement defines "Class/Collective Members" as "all employees who worked at Hikaru Center City and Hikaru Manayunk from June 14, 2011 until October 5, 2014." *See* Joint Stip. of Settlement and Release at ¶ 1.6. Under the Settlement Agreement, every member of the putative Class is also a member of the putative Collective and vice versa. The Settlement Agreement provides that Defendants shall pay a maximum settlement amount of $225,000 (the "Settlement Payment"). *Id.* at ¶ 3.1 The Settlement Payment includes attorneys'

fees and costs,[1] a service claim to Mr. Leap,[2] and a payment to a claims administrator. *Id.* at
¶¶ 3.2-3.4. The remainder of the Settlement Payment (the "Net Settlement Fund") will be paid as
FLSA damages[3] on a percentage basis to Class/Collective Members who join the litigation by
"opting in" ("Opt-In Plaintiffs"). *Id.* at ¶ 3.5. Specifically, each Opt-In Plaintiff's share of the Net
Settlement Fund will be determined by multiplying the Net Settlement Fund by the quotient of
the number of hours the Opt-In Plaintiff worked as a server at Hikaru Center City and/or Hikaru
Manayunk between June 14, 2011 and October 5, 2014, and 26,353 hours (the total number of
hours that all servers worked at those restaurants during the relevant time period). *Id.*
Class/Collective Members who fail to opt in to the lawsuit will not receive any money from the
Net Settlement Fund. Any money that remains from the Net Settlement Fund after payments are
made to the Opt-In Plaintiffs will be returned to the Defendants. *Id.* at ¶ 3.5(I).

 In return for their share of the Net Settlement Fund, the Opt-In Plaintiffs will release all
claims under the FLSA, the Pennsylvania Minimum Wage Act, the Pennsylvania Wage Payment
and Collection Law, and the Philadelphia Gratuity Protection Ordinance, as well as all claims of
common law conversion and unjust enrichment. *Id.* at ¶ 3.7. But because the resolution of class
actions are binding on class members unless they "opt out," and the resolution of collective
actions are *not* binding on collective members unless they "opt in," *see Knepper v. Rite Aid
Corp.*, 675 F.3d 249 (3d Cir. 2012), Class/Collective Members will release different sets of
claims depending on whether they opt in to the litigation, opt out of the litigation, or do nothing:

---

[1] Class counsel will apply for attorneys' fees totaling one third of the Settlement Fund in a
formal motion for approval of fees at a later date.

[2] Mr. Leap will apply for an additional payment of $5,000 in recognition of the service he
rendered on behalf of the Class/Collective.

[3] Under the circumstances presented in this case, the Settlement Agreement's attribution of
damages to the FLSA claim rather than the class action claims will not prevent any
Class/Collective Member from receiving his or her share of the Net Settlement Fund. *See infra*
Part III.A.

plaintiffs who opt in will release their state law and FLSA claims, plaintiffs who opt out will preserve both their state law and FLSA claims, and plaintiffs who do nothing will preserve their FLSA claims but release their state law claims.[4]

### B.    Procedural Background

After Mr. Leap filed his Motion for Preliminary Approval of Class and Collective Action Settlement (Docket No. 22), the Court held a Preliminary Approval Hearing on December 5, 2014. At the hearing, the Court identified several parts of the Settlement Agreement and the Proposed Notice of Settlement—primarily involving the Settlement Agreement's effect on plaintiffs who neither opt in nor opt out of the litigation—that were in need of clarification. After the parties revised their original Settlement Agreement and Proposed Notice of Settlement to address the Court's concerns, the Court held a Second Preliminary Approval Hearing on February 4, 2015.

## II.    LEGAL STANDARDS

### A.    Preliminary Approval and Class Certification Standards

Because it resolves the rights of absent parties, a settlement of a class action is not effective until approved by a court after "notice in a reasonable manner to all class members who would be bound by the proposal," Fed. R. Civ. P. 23(e)(1); *see, e.g.*, *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349-50 (3d Cir. 2010), and "only after a hearing and on finding that it is fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(2).[5] If the reviewing court has not yet

---

[4] Despite the procedural complexities of maintaining both a class and collective action in the same litigation, the Third Circuit Court of Appeals has held that opt-out damages class actions and opt-in FLSA collective actions are not "inherently incompatible." *See Knepper*, 675 F.3d at 249.

[5] Federal Rule of Civil Procedure 23(e) provides, in full:

certified the class, it also "must determine by order" whether to do so. *Id.* 23(c)(1). If the court concludes that the class should be preliminarily certified for purposes of the settlement, it must direct that members of the potential class be given the opportunity to request to be excluded, so that, for example, they may be able to pursue claims individually without being bound by the proposed settlement agreement. *See id.* 23(b)(2)(B)(vi), (e)(4).

The overall approval process for proposed class action settlement agreements generally proceeds in two steps. First, the court holds a preliminary approval hearing in order to (a) determine whether any obvious problems exist; (b) if necessary, determine whether the proposed class should be certified for settlement purposes; and (c) evaluate the parties' proposed plan for notifying class members of the settlement and their right to opt out or make claims against the settlement amount. Second, the court holds a final approval hearing, at which class members, having received notice of the proposed settlement, may voice any objections. *See generally, e.g.*, *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 777-78 (3d

---

> **(e) Settlement, Voluntary Dismissal, or Compromise.** The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>
> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
>
> (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
>
> (5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e).

Cir. 1995); *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 438-39 (E.D. Pa. 2008); David F. Herr,

*Annotated Manual for Complex Litigation* § 21.632 (West, 4th ed. 2013).[6]

       The preliminary approval determination requires the Court to consider whether "(1) the

negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of

the settlement are experienced in similar litigation; and (4) only a small fraction of the class

objected." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003) (citing

*General Motors.*, 55 F.3d at 785-86); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 233 n.

18 (3d Cir. 2001). If, after consideration of those factors, a court concludes that the settlement

should be preliminarily approved, "an initial presumption of fairness" is established. *In re*

*Linerboard*, 292 F.Supp.2d at 638 (citing *Gen. Motors Corp.*, 55 F.3d at 785).[7]

---

[6] As the Third Circuit Court of Appeals has explained:

> Usually, the request for a settlement class is presented to the court by both
> plaintiff(s) and defendant(s); having provisionally settled the case before seeking
> certification, the parties move for simultaneous class certification and settlement
> approval. Because this process is removed from the normal, adversarial, litigation
> mode, the class is certified for settlement purposes only, not for litigation.
> Sometimes, as here, the parties reach a settlement while the case is in litigation
> posture, only then moving the court, with the defendants' stipulation as to the
> class's compliance with the Rule 23 requisites, for class certification and
> settlement approval. In any event, the court disseminates notice of the proposed
> settlement and fairness hearing at the same time it notifies class members of the
> pendency of class action determination. Only when the settlement is about to be
> finally approved does the court formally certify the class, thus binding the
> interests of its members by the settlement.

*Gen. Motors Corp.*, 55 F.3d at 776-78 (footnote omitted).

[7] In assessing fairness at a later point during litigation, a court will ultimately consider:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction
> of the class to the settlement; (3) the stage of the proceedings and the amount of
> discovery completed; (4) the risks of establishing liability; (5) the risks of
> establishing damages; (6) the risks of maintaining the class action through trial;
> (7) the ability of the defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible recovery; (9) the

Because no class settlement can exist without a class, if the reviewing court has not yet certified a class, it must determine whether the proposed settlement class should be certified for purposes of settlement, *Amchem v. Windsor*, 521 U.S. 591, 620 (1997), and the final certification decision is left for the final fairness hearing.[8] The class must be "'currently and readily ascertainable based on objective criteria,' and a trial court must undertake a rigorous analysis of the evidence to determine if the standard is met." *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013) (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)). The proposed class settlement must also satisfy the requirements of Federal Rule of Civil Procedure 23, *Amchem*, 521 U.S. at 620, which requires the proponents of class certification to demonstrate that all of the requirements of Rule 23(a) are met—that is, that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a). Additionally, "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)," *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011). One option, under Rule 23(b)(3), allows a class action to be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions

---

range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 317 (3d Cir. 1998) (ellipses omitted) (quoting *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975)).

[8] At the preliminary approval stage, the Court may conditionally certify the class for purposes of providing notice. Herr, *supra*, § 21.632 ("The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)."). "By specifying certification for settlement purposes only, . . . the court preserves the defendant's ability to contest certification should the settlement fall apart." *Gen. Motors Corp.*, 55 F.3d at 786.

affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3).

### B.      Standard for Conditional Certification of Collective Action

A collective action under the FLSA "may be maintained . . . by any one or more employees for and in behalf of themselves and other employees similarly situated." 29 U.S.C. § 216(b). If employees choose to bring a FLSA collective action in federal court, members of the collective may only join the litigation if they "opt in" by affirmatively indicating their consent to be part of the collective. "No employee shall be a party plaintiff to any such action unless he gives consent in writing to become such a party and such consent is filed in the court in which such action is brought. *Id.*

To certify a plaintiff's case as a collective action under FLSA, "a plaintiff must produce some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011), *rev'd on other grounds*, *Genesis HealthCare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013). Our Court of Appeals has cited approvingly to the Second Circuit's formulation of the steps in a FLSA case: the first step consists of "determin[ing] *whether* 'similarly situated' plaintiffs do in fact exist," and during the second step, the court determines "whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 & n.4 (3d Cir. 2012) (quoting *Myers v. Hertz Co.*, 624 F.3d 537, 555 (2d Cir. 2010)). Thus, at the conditional certification stage, the court conducts a preliminary inquiry into whether the plaintiff's proposed members were collectively "the victims of a single decision, policy, or plan . . . ." *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 388 (3d Cir. 2007).

### III.   DISCUSSION

Here, the Court concludes, the circumstances demonstrate that the Settlement is fair to the Class/Collective Members, that it should be preliminarily approved for settlement purposes, and that the Class and the Collective should each be conditionally certified.

### A.   Preliminary Approval of Class Action Settlement

The Court finds that the proposed settlement has no obvious deficiencies. No Class/Collective Members have objected to the settlement, and the settlement is the product of extensive negotiations that occurred over several weeks and reportedly at arm's length. *See* Pl.'s Mot. at 4. It also appears that there was sufficient discovery to allow counsel to assess the merits and risks of the case before agreeing to settle. As Plaintiff's Motion explains:

> Based upon the volume of information supplied by the Defendants, and the Plaintiffs' evaluation of the information supplied to date, this $225,000 settlement pool represents over 90% of the best case scenario total for FLSA/wage claims (i.e. three years of hours—26,353 hours—multiplied by $4.42 per hour multiplied by 2 for liquidated damages) and credit card tip discount claims (approximately $11,000)." (Pl.'s Mot. at 26). Plaintiffs' counsel carefully evaluated the merits of the case and decided that it is a worthwhile settlement, especially since the Hikaru Manayunk restaurant has closed and there are concerns about a potential bankruptcy.

*Id.* at 27. Because the greatest possible recovery appears to be about $250,000, the settlement amount of $225,000—reflecting a 10% discount for risk and the avoiding the cost of litigation—is well within the range of reasonableness.

Neither the proposed service award nor the requested attorneys' fees present obvious deficiencies in the settlement. The settlement provides for only a modest service award for Mr. Leap ($5,000 out of $225,000) because, as the Motion explains, Mr. Leap was critical to having the case go forward. *See id.* at 25-26 (explaining that Mr. Leap convinced the attorneys to take the case and helped them gather useful evidence). Given that "it is surely proper to provide reasonable incentives to individual plaintiffs whose willingness to participate as lead plaintiffs

allows class actions to proceed and so confer benefits to broader classes of plaintiffs," *Rosenau v. Unifund Corp.*, 646 F. Supp. 2d 743, 755 (E.D. Pa. 2009), the modest additional incentive award of $5,000 is reasonable.[9] Similarly, the settlement provides for attorneys' fees not to exceed one-third of the settlement fund and reimbursement of expenses. Fee awards in common fund cases generally range from 19% to 45% of the fund. *See Bredbenner v. Liberty Travel, Inc.*, Civ. A. Nos. 09-905, 09-1248, 09-4587, 2011 WL 1344745, at *21 (D.N.J. Apr. 8, 2011). Consequently, the Court preliminarily finds Class counsel's request for attorneys' fees to be reasonable.

The Court also notes that the attribution of damages to the FLSA claim rather than the class action claims does not present an obvious deficiency at this stage of the litigation. In some cases, maintaining a class action and a collective action in a single lawsuit has the potential to prejudice a subset of plaintiffs. For example, the FLSA has a two-year statute of limitations that is only tolled when the collective member opts in to the litigation, but the statute of limitations for class action claims is tolled upon the *filing* of the putative class action. *See Symczyk*, 656 F.3d at 200. Thus, when damages are attributed to a FLSA claim rather than a class action claim, plaintiffs' remedies may be limited depending on when they opted in to the litigation.[10]

---

[9] The Court recognizes that some courts have required a named plaintiff, "to be entitled to an incentive award," to show, in addition, "(1) the risks that the named plaintiff undertook in commencing class action; (2) any additional burdens assumed by named plaintiffs but not unnamed class members; and (3) the benefits generated to class members through named plaintiff's efforts." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 473 (E.D. Pa. 2000). Here, the Court will not require Mr. Leap to make any additional showing. Mr. Leap  (1) presumably took little risk in prosecuting this action; his counsel are now receiving, and had every expectation of receiving, if he prevailed, attorneys' fees paid for by Defendants. But he (2) certainly assumed the additional burden of prosecuting the litigation, and (3) the Class members will receive benefits (in the form of damages) commensurate with the number of hours they worked at the Hikaru restaurants.

[10] For example, if John Doe worked for Defendants from June 14, 2011 to October 4, 2012, and opts into this lawsuit on February 1, 2015, he is only eligible to recover FLSA damages

However, the Settlement Agreement treats all Class/Collective Members the same regardless of when they opt in to the litigation. *See* Joint Stip. of Settlement & Release at ¶ 3.5. Because no Class/Collective Member will be unable to recover their share of the Net Settlement Fund due to the attribution of damages to the FLSA claim, such attribution presents little risk of prejudice.

Similarly, attributing damages to the FLSA claim also means that Class/Collective Members must affirmatively opt in to the litigation in order to receive a settlement payment, whereas attributing damages to the class action claims might allow settlement payments to be distributed to all Class/Collective Members without a claims process. As a result, there is a risk that those Class/Collective Members who neither opt in nor opt out may waive their class action claims *and* receive no settlement payment. Nevertheless, the Court does not believe that this possibility presents an obvious deficiency at this stage of the litigation. First, Plaintiffs represented to the Court that evidence gathered during discovery makes the FLSA claim much stronger than the class action claims, so it may be appropriate to attribute the Settlement Payment to FLSA damages. Second, because the Settlement Agreement treats members of the putative Class and the putative Collective identically, attributing damages to the FLSA claim will not prevent any Class/Collective Member who opts into the lawsuit from receiving a payment. In other words, no Class/Collective Member will be unable to receive his or her share of the Net Settlement Fund because the damages are attributed to the FLSA claim. Third, a high percentage of Class/Collective Members may yet opt in to the litigation, thus obviating this particular concern. For these reasons, under the circumstances of this case, the Court finds that there is no obvious deficiency at this stage of the litigation. Nevertheless, the Court will likely consider this

---

accruing after February 1, 2013. Because the facts show that Doe has no such damages, he would be ineligible to recover under the FLSA.

aspect of the settlement more closely at the final fairness hearing when more certainty about the actual exercise of options by the Class/Collective Members will be known.

Finally, the Court observes that "the proponents of the settlement"—that is, Class counsel—"are experienced in similar litigation." *Gen. Motors Corp.*, 55 F.3d at 785. Mr. Goldman and Ms. Ballard, as described in further detail below, are experienced in prosecuting class actions. Their recommendation accords with this Court's judgment that the Settlement Agreement is presumptively fair.

For the foregoing reasons, the Court finds that the Settlement Amount is within the range of reasonableness and that the relief provided as to the Class, Mr. Leap, and Class counsel, is presumptively fair for purposes of preliminary approval.

## B.  Preliminary Certification of the Class for Settlement Purposes

At the preliminary approval stage, if the court has not already certified the prospective settlement class, it must "determine that the requirements for class certification under Rule 23(a) and (b) are met." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 319 (3d Cir. 2011) (en banc) (quoting *Pet Food Prods.*, 629 F.3d at 341 (3d Cir. 2010)). The plaintiffs must satisfy all four Rule 23(a) factors—numerosity, commonality, typicality, and adequacy of representation; additionally, "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Dukes*, 131 S. Ct. at 2548.[11]

---

[11] An additional requirement for class certification not mentioned in Rule 23 is ascertainability of the class, *see generally, e.g.*, *Carrera*, 727 F.3d 300; "[t]he method of determining whether someone is in the class must be 'administratively feasible,'" *id.* at 307 (quoting *Marcus*, 682 F.3d at 594)). These requirements are clearly met here, because the Defendants have employment records identifying all of the Class/Collective Members.

1.     **Rule 23(a) Factors**

The proposed Settlement Agreement easily meets Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation. First, "[n]o minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Here, payroll records show that there are 75-85 putative Class members. Because "the class is so numerous that joinder of all members is impracticable," Fed. R. Civ. P. 23(a)(1), Rule 23(a)'s first prong is satisfied.

Second, the named plaintiff(s) must show that they "share at least one question of fact or law with the grievances of the prospective class." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)). The purpose of the commonality requirement is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of SW v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Here, the class members have several questions of fact in common because all servers allegedly were required to (a) participate in a tip pool over which they had no control, (b) share their tips with employees who did not render services directly to customers, (c) share their tips with the owner, and (d) give 5% of their credit card tips to management. *See generally* Declaration of Derek Leap (Docket No. 22-4); Declaration of Julian Guerra (Docket No. 22-5). In addition, the class members have common questions of law, namely whether Defendants' policies—the subjects of the common questions of fact—violated the relevant statutes. The Court finds that this case, like many other cases involving wage claims, presents perhaps "the most perfect questions for class

treatment." *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007). As a result, Rule 23(a)(2)'s commonality requirement is satisfied.

Third, Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. "[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims," *Baby Neal*, 43 F.3d at 58 (citation omitted). Here, Rule 23(a)(3)'s typicality requirement is satisfied because Mr. Leap's claims are virtually identical in all respects to those of the other class members, as they all allegedly participated in the same improper tip pools at Defendants' restaurants.

Fourth and finally, Mr. Leap and Class counsel "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent," *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (quoting *Amchem*, 521 U.S. at 625), and "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class," *id.* (quoting *Baby Neal*, 43 F.3d at 55). The Court must be satisfied that (a) plaintiffs' attorneys are qualified, experienced, and generally able to conduct the litigation; and (b) the interests of the named representatives are not antagonistic to those of other class members. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004). Here, Mr. Leap appears to have no interests antagonistic to the interests of the absent class members (except for the service claim, which is not an adverse interest or otherwise a problem, *see supra*).

In addition, as discussed below, in the section on the appointment of class counsel, Mr. Goldman and Ms. Ballard have appropriate experience with class action litigation.

### 2.    Rule 23(b)'s Requirements

The parties have elected to proceed under Rule 23(b), which requires the court to

find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

> **(A)** the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> **(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> **(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> **(D)** the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). *See also generally Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013). The "focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 240, 266 (3d Cir. 2009). Each element of plaintiffs' claims need not be susceptible to common proof in order to satisfy the predominance requirement of Rule 23(b)(3). *See Amgen, Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1197 (2013).

Although "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)," *Comcast*, 133 S. Ct. at 1432, it is easily met here.[12] As the Motion explains, and the

---

[12] In fact, as the Supreme Court recently explained, Rule 23(b)(3)'s four enumerated considerations are designed as "procedural safeguards" "for situations in which class-action treatment is not [so] clearly called for," *id.* (internal quotation marks omitted); they constitute a "nonexhaustive list of factors pertinent to a court's 'close look' at the predominance and superiority criteria" in order to ensure that "[c]ommon questions . . . 'predominate over any questions affecting only individual members'; and class resolution [is] 'superior to other

Court agrees, "Hikaru management [allegedly] had an unlawful system, and all servers were subjected to it. The class' interests are aligned and unified, and common questions predominate." (Pl.'s Mot. at 16).

The Court also finds that a class action is a superior mechanism. First, Mr. Leap and the class members have limited financial resources to prosecute individual actions, so there appears to be little interest in bringing separate actions. "Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action." *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 626 (E.D. Pa. 1994). Second, the Court is unaware of any other lawsuits that have been filed against Defendants with the same allegations. Third, the allegedly wrongful conduct occurred in Philadelphia, so this Court is a desirable forum for the litigation. Finally, there are no foreseeable difficulties in managing a class action in this case.

### 3.     Appointment of Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(A), (B). The Motion describes how Mr. Goldman and Ms. Ballard have a wealth of experience with both employment cases and class actions. *See* Mot. at 17-18 (listing cases handled by Mr. Goldman and Ms. Ballard). As a result, the Court will appoint them Class counsel in this matter.

### B.     Conditional Certification of a FLSA "Opt-In" Collective Action

At this stage of the collective action, the Court must determine whether "similarly situated" plaintiffs actually exist. *See Zavala*, 691 F.3d at 536 & n.4. The question of whether the

---

available methods for the fair and efficient adjudication of the controversy,'" *Amchem*, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23(b)).

plaintiffs who have opted in are *in fact* "similarly situated" to Mr. Leap will be addressed at the final fairness hearing. But for now, "a showing that opt-in plaintiffs bring the same claims and seek the same form of relief has been considered sufficient for conditional certification." *Adami v. Cardo Windows, Inc.*, 299 F.R.D. 68, 79 (D.N.J. 2014).

Mr. Leap has made the requisite showing that a single decision, policy, or plan caused injuries to the Class/Collective Members and that similarly situated plaintiffs exist. The Class/Collective Members all worked for Defendants as tipped employees at Hikaru Center City and/or Hikaru Manayunk. Mr. Leap alleges that they were paid less than the required minimum wage because Defendants illegally claimed the tip credit while retaining and/or misappropriating the Collective Plaintiffs' tips. *See Shahriar v. Smith & Wollensky Restaurant Grp., Inc.*, 659 F.3d 234, 240 (2d Cir. 2011) ("Under the FLSA an employer may not avail itself of the tip credit if it requires tipped employees to share their tips with employees who do not "customarily and regularly receive tips."). More specifically, Mr. Leap alleges that all members of the Collective were required to participate in a tip pool, and those tips were shared with tip-ineligible employees including the owner, the kitchen chefs, and the sushi chefs. *See Ford v. Lehigh Valley Restaurant Grp., Inc.*, No. 14-227, 2014 WL 3385128, at *4 (M.D. Pa. July 9, 2014) (noting that chefs who do not provide direct customer service are generally not eligible to participate in the tip pool). In support of his allegations, Mr. Leap relies on (a) his own declaration, (b) the declaration of Julian Guerra, another server at Defendants' restaurants, (c) a picture of the tip out instruction sheet, and (d) Mr. Leap's diagram of the tip out sheet. *See* Docket Nos. 17-4, 17-5, 17-6, & 17-7). As only a "modest factual showing" is required before the Court may conditionally certify a collective action, *see Symczyk*, 656 F.3d at 193, the evidence to which Mr. Leap cites is sufficient for the Court to conditionally certify the collective action in this case.

### C.      Plan for Notice and Fairness Hearing

Under Federal Rule 23(c)(2)(B),

[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:

> **(i)** the nature of the action;
>
> **(ii)** the definition of the class certified;
>
> **(iii)** the class claims, issues, or defenses;
>
> **(iv)** that a class member may enter an appearance through an attorney if the member so desires;
>
> **(v)** that the court will exclude from the class any member who requests exclusion;
>
> **(vi)** the time and manner for requesting exclusion; and
>
> **(vii)** the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). Further, where, as here, the parties have proposed settlement but the class has not already been certified, the notice must "afford[] a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so." *Id.* 23(e)(4).

Similarly, "[u]pon conditional certification of a FLSA collective action, a court has discretion to provide court-facilitated notice to potentially eligible members of the collective action." *Pearsall-Dineen v. Freedom Mortg. Corp.*, 27 F. Supp. 3d 567, 573 (D.N.J. 2014). Such notices ensures that employees receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate" and "serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cut off dates to expedite the disposition of the action." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

Plaintiffs have retained the Garden City Group ("Garden City") as the claims administrator in connection with this litigation. Garden City will disseminate the Notice to all Collective/Class Members via first class mail to their last known addresses, as maintained by Defendants.[13] *See* Joint Stip. of Settlement and Release at ¶ 3.5(E). For any Notice returned as undeliverable, Garden City will attempt a skip trace using the computer databases available and the information provided by Defendants. Individuals who are located will be sent an additional copy of the Notice. "Generally speaking, where there is a relatively small number of parties in the class, delivering notice via first class mail to the last known address in defendant's records . . . [is] the most efficient and effective means for reaching individual members of the class." *American Sales Co., Inc. v. SmithKline Beecham Corp.*, 274 F.R.D. 127, 137 (E.D. Pa. 2010) (internal quotation marks and citations omitted). In this case, as the putative class is "relatively small," first class mailing of the notices comports with due process and Federal Rule of Civil Procedure 23(c)(2) as "the best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2). *See generally, e.g.*, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 318-19 (1950). Moreover, because the Court is satisfied that the Notice of Settlement of Class and Collective Action Lawsuit and Fairness Hearing adequately summarizes the information required to appear in the Notice under Federal Rule 23(c)(2)(B), the Court will approve the Notice, along with the Opt-In and Opt-Out Forms (Docket No. 30, pp. 17-26).

---

[13] "Because the settlement will have been preliminarily approved by way of this Memorandum and Order, notice of the certification and the proposed settlement can be combined." *Gates*, 248 F.R.D. at 445.

**IV.      CONCLUSION**

For the foregoing reasons, the Court will preliminarily approve the parties' Settlement Agreement, preliminarily certify the Class for settlement purposes, and conditionally certify the Collective. An Order with relevant dates follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge